**UNITED STATES, Appellee,**

v.

**Private (E–1) Henry A. HAYES, III, SSN 043–48–7212 United States Army, Appellant.**

**CM 434993.**

U. S. Army Court of Military Review.

6 May 1977.

*Captain Jay Sacks Cohen, JAGC,* argued the cause for the appellant. With him on the brief were *Lieutenant Colonel John R. Thornock, JAGC,* and *Captain Buren R. Shields, III, JAGC.*

*Captain Ronald A. Warner, JAGC,* argued the cause for the appellee. With him on the brief were *Colonel Thomas H. Davis, JAGC,* and *Major Michael B. Kennett, JAGC.*

Before CARNE, MITCHELL and MOUNTS, Appellate Military Judges.

## OPINION OF THE COURT

MOUNTS, Judge:

### Case Summary

The stolen items, which form the basis for two of the charges, were found and seized as a result of a barracks security inspection procedure authorized by the accused's company commander. The accused was coming into the barracks with a large banana box when the charge of quarters stopped him and asked if he could look in the box. The accused placed the box on the desk so the charge of quarters could inspect it. The box was opened by the charge of quarters who discovered the items which had been illegally obtained. The record reveals that the accused knew or should have known of these security inspections prior to bringing the box into the barracks.

The inspection procedure required the logging in and out of the barracks of hand-carried items transported by persons entering or leaving the barracks. This logging procedure was done by the charge of quarters and was conducted in conjunction with a personnel sign-in/sign-out procedure authorized by a post regulation. The inspection procedure was limited to a search of hand-carried items and did not provide for a personal body search. The charge of quarters testified that he was to check all items that looked suspicious or any large containers. The unit commander testified that the inspection and search of hand-carried items was instituted to provide the soldiers in the barracks with a more secure and harmonious living environment, specifically, to help in reducing the use of drugs, to aid in controlling bomb threats, and to reduce the illegal use of alcohol in the barracks.

### Issue

Was the barracks security inspection procedure which required the accused to be subject to inspection and search of items carried into his barracks violative of the Fourth Amendment?

### Decision of the Search Issue

■ The Fourth Amendment of the United States Constitution prohibits unreasonable searches.[1] The test for determining the reasonableness of any specific search is to balance the need to search against the invasion which the search entails.[2]

■ A search pursuant to a warrant based upon probable cause is considered reasonable but the law has fostered certain exceptions to the warrant requirement. These exceptions which are also considered reasonable searches include; a search with consent, a search incident to arrest, and a search based upon an emergency situation.[3] A further extension of reasonable warrantless searches was again recognized in military law by the United States Court of Military Appeals in the case of *United States v. Poundstone.*[4] In *Poundstone* the Court stated:

"Probable cause to believe that a crime was committed or is in progress is not the universal standard for the reasonableness of government action affecting the priva-

1. *Go-Bart Importing Co. v. United States,* 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931).

2. *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

3. *United States v. Unrue,* 23 U.S.C.M.A. 466, 47 C.M.R. 556 (1973).

4. 22 U.S.C.M.A. 277, 46 C.M.R. 277 (1973).

cy of the individual. . . . Whether denominated a search or an 'administrative investigation,' other types of examination of the person or his property, although not based upon probable cause, are not violative of the protection against unreasonable search. . . . When such action is 'a crucial part of the regulatory scheme' of a Government program and presents only a limited threat to the individual's 'justifiable expectations of privacy,' the Government may lawfully enter private property without probable cause. . . ."[5]

Thus an additional area of reasonableness for warrantless searches has been recognized by military law in which a balancing test is required to determine the validity of a search pursuant to a regulatory scheme. This test balances the crucial needs of the Government against the soldier's justifiable expectation of privacy.

The United States Court of Military Appeals, as presently constituted, has not been in complete agreement as to the validity of certain types of warrantless searches. Recently, Judge Perry held in *United States v. Roberts*,[6] that the shakedown inspection in a search specifically for criminal goods within a barracks was not a permissible intrusion into a person's reasonable expectation of privacy even in the military setting. Chief Judge Fletcher concurred in the result in the *Roberts* case for the reasons set forth in his separate opinion in *United States v. Thomas.*[7] Chief Judge Fletcher, in his separate opinion in *Thomas* noted:

" . . . that the paramount interests of our society demand that military commanders be given authority to conduct *reasonable* inspections to ferret out drug abuse even absent a showing of probable cause and even if the individual already is suspected of possessing contraband. . . ."[8]

The Chief Judge further stated:

" . . . Therefore, while I sanction the commander's constitutional right to conduct such inspections as part of his command function, the abuses inherent in any such inspection authority lead me to conclude that, to discourage future unlawful police activity, the fruits of all such inspections may not be used either as evidence in a criminal or quasi-criminal proceeding or as a basis for establishing probable cause under the Fourth Amendment. . . ."[9]

Judge Cook in his dissent in the *Roberts* case observed:

" . . . In my opinion the 'shakedown inspection,' as it has been applied by this Court in earlier cases, has the force of tradition and reason behind it. Adherence to its tenets fully justifies the action taken by the commander in this case, but even if all the Court's previous decisions are disregarded, I believe that the essential nature of the shakedown inspection is analogous to the sort of 'area code-enforcement inspection' that has been explicitly approved by the Supreme Court for the *prevention*, as well as the abatement, of conditions dangerous to the community. . . ."[10]

■ Whether the procedure authorized by the unit commander in our case is characterized as an inspection, a search, or a search incident to a security inspection, appears not to be meaningful under current military law. Disregarding the label, the question still to be resolved is whether the procedure under the circumstances which lead to the discovery of the evidence was reasonable. Applying one of the accepted tests for reasonableness, the balancing test, to our case, it appears that the crucial needs of the Government should prevail. The

**5.** *Id.* at 280, 46 C.M.R. at 280.

**6.** 25 U.S.C.M.A. 39, 54 C.M.R. 39, 2 M.J. 31 (1976).

**7.** 24 U.S.C.M.A. 228, 51 C.M.R. 607, 1 M.J. 397 (1976).

**8.** 1 M.J. at 404.

**9.** 1 M.J. at 405.

**10.** 2 M.J. at 36.

search of the accused's box was based upon an inspection procedure authorized by a local unit regulation. The regulatory system of inspections of hand-carried items was commenced to insure the safety of the barracks from the introduction of narcotics, alcohol or explosives. The system of inspection presents a minimal intrusion into the soldier's expectation of privacy. The procedure used by the unit commander was reasonable in its application to achieve its laudatory purposes. The inspection and search were limited to hand-carried items and did not involve a search of the person. The search took place in the entrance area of the barracks which is a common use area and did not trespass upon the privacy of the soldiers barracks room or specific bed, wall locker area. The accused knew or should have known that hand-carried items were subject to search. There is no indication from the record that the searches were only carried out against certain soldiers who were suspected of criminal conduct. Although the charge of quarters did testify that he checked all items that looked suspicious or any large containers, the implication that he had discretion not to check certain hand-carried items does not make the application of the local regulation unreasonable. The charge of quarters' pragmatic application of the regulation merely reflects good sense in its execution. It does not establish any arbitrary or capricious selection of items to be inspected. In addition, the use of this regulatory inspection procedure is not analogous to the impermissible dragnet police tactics for gateway searches which were recently criticized by the United States Court of Military Appeals.[11] Therefore, we might conclude that the search incident to the regulatory inspection was valid and the seized items could be lawfully used as evidence. Have the recent cases of *Thomas* and *Roberts*, however, changed the military law in the area of barracks inspections?

Based upon Judge Cook's dissent in *Roberts*, we believe he would agree to the validity of this inspection procedure. The procedure appears to be analogous to an area-enforcement inspection instituted for the prevention of conditions dangerous to the community.

In view of Judge Perry's strong position in *Roberts* as to the soldier's rights of privacy, it is difficult to predict his position in our case. We note, however, important distinctions in this case which should tip the scales in favor of the Government's need to reasonably aid in insuring safety to soldiers in the barracks. Judge Perry seems to bottom his opinion on the soldier's reasonable expectation of privacy in his barracks room or area. In our case the accused was in a common use area, a search of his person was not involved and since he knew or should have known of the local regulation his reasonable expectation of privacy was not violated.

Chief Judge Fletcher, based upon his reasoning in his separate opinion in *Thomas*, probably would construe this search as a reasonable inspection to ferret out drug abuse as part of the unit commander's command function and interest in the welfare of his troops. Would he say, however, that the abuses inherent in this type of search procedure would require the exclusion of the seized evidence to discourage possible future unlawful police activity? We find that in this search procedure no such inherent danger exists. When the soldiers are all pre-warned, as to when and where the search will take place and they activate the search by their own ingress or egress, the system does not lend itself to the use of unlawful police activity. In any event, is it necessary to conclude that since some barracks inspections by unit commanders may be abuses of reasonable inspection procedures, that the fruits of all barracks inspections may not be used as evidence? The exclusionary rule was never intended to bar the fruits of a reasonable inspection or search from evidence. Courts have successfully litigated the reasonableness of a search to include the mental intent and the motives of a person making a search incident to an inspection. When otherwise val-

11. *United States v. Chase*, 24 U.S.C.M.A. 95, 51 C.M.R. 268, 1 M.J. 275 (1976).

id evidence is seized in a reasonable inspection, even within the soldier's barracks room, military morale and discipline are eroded if the evidence can not be used for appropriate disciplinary action. Could the Court of Military Appeals not properly rely on the military courts to litigate and successfully find the true motive of the person inspecting, rather than to exclude all evidence in such cases due to a possible misuse of the inspection procedure? This question, however, does not have to be answered to reach a finding in this case. As previously noted, the circumstances surrounding this search do not provide an opportunity for police misuse of the procedure against an unsuspecting soldier. Therefore, we find the search and seizure of the evidence valid and the acceptance of the evidence by the Court as lawful.

### Other Issues

The appellant further alleges that there is insufficient proof of record to sustain the Government's burden of proving the accused guilty of Specification 3 of Charge III. We agree that the Government has failed to carry its burden in proving that the accused breached his restriction on 3 March 1976.

### Decision

The findings of guilty of Specification 3, Charge III, are set aside and those charges are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the above-indicated error and the entire record, the Court affirms only so much of the sentence as provides for a dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for three years and four months.

Senior Judge CARNE and Judge MITCHELL concur.