UNITED STATES, Appellee,

v.

Henry A. HAYES, III, Private U. S. Army, Appellant.

No. 34,415.

CMR 434993.

U. S. Court of Military Appeals.

July 13, 1981.

For Appellant: *Captain James F. Nagle* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Charles A. Byler, Captain Julius Rothlein* (on brief); *Lieutenant Colonel John F. Lymburner.*

For Appellee: *Captain John T. Meixell* (argued); *Major Ted B. Borek* (on brief); *Colonel R. R. Boller, Major David McNeill, Jr.*

Opinion of the Court

FLETCHER, Judge:

The appellant was tried by general court-martial composed of a military judge alone. Contrary to his pleas, he was found guilty of two separate specifications of house-breaking,[1] one specification of larceny and

---

1. These were alleged as Charge I and Additional Charge II.

four specifications of breaking restriction, in violation of Articles 130, 121, 134, Uniform Code of Military Justice, 10 U.S.C. §§ 930, 921, 934, respectively. The military judge sentenced the appellant to a dishonorable discharge, confinement at hard labor for 4 years and forfeiture of all pay and allowances. The convening authority disapproved the findings of guilty to two specifications of breaking restriction and reduced the confinement by 4 months. The Army Court of Military Review dismissed a breach of restriction specification and reduced the approved confinement by 4 more months. 3 M.J. 672 (1977).

This appeal concerns the validity of the findings of guilty to one housebreaking offense and the larceny offense both of which occurred on February 11, 1976. The issue granted (3 M.J. 464) for review is:

WHETHER THE BARRACKS SECURITY INSPECTION SYSTEM WHICH REQUIRED APPELLANT TO DIVULGE WHAT HE CARRIED INTO HIS DWELLING WAS A SEARCH VIOLATIVE OF THE FOURTH AMENDMENT.

At his court-martial, appellant objected to the admission of several items seized as a result of this barracks security system. Para. 152, Manual for Courts-Martial, United States, 1969 (Revised edition). These items formed the basis for the findings of guilty to Charges I and II.

The Army Court of Military Review summarized the facts of the case as follows:

The stolen items, which form the basis for two of the charges, were found and seized as a result of a barracks security inspection procedure authorized by the accused's company commander. The accused was coming into the barracks with a large banana box when the charge of quarters stopped him and asked if he could look in the box. The accused placed the box on the desk so the charge of quarters could inspect it. The box was opened by the charge of quarters who discovered the items which had been illegally obtained. The record reveals that the accused knew or should have known of these security inspections prior to bringing the box into the barracks.

The inspection procedure required the logging in and out of the barracks of handcarried items transported by persons entering or leaving the barracks. This logging procedure was done by the charge of quarters and was conducted in conjunction with a personnel sign-in/sign-out procedure authorized by a post regulation. The inspection procedure was limited to a search of handcarried items and did not provide for a personal body search. The charge of quarters testified that he was to check all items that looked suspicious or any large containers. The unit commander testified that the inspection and search of hand-carried items was instituted to provide the soldiers in the barracks with a more secure and harmonious living environment, specifically, to help in reducing the use of drugs, to aid in controlling bomb threats, and to reduce the illegal use of alcohol in the barracks.

*Id.* at 673.

■ The appellant objected to the admission of certain physical evidence at his court-martial which was obtained as a result of this barracks security inspection system. In particular, he asserted that such a security system constituted unreasonable government action and in his case was utilized as a pretext for a general exploratory search for criminal evidence in violation of the fourth amendment of the United States Constitution. Due to the inadequacy of the record of trial, we cannot decide either of these questions. Since the burden is upon the Government to show the search was lawful, we find the challenged evidence was not admissible at appellant's court-martial. Para. 152, Manual *supra.* In view of the absence of untainted evidence to support these findings of guilty, they must be set aside.

■ The critical issue in this case is the "reasonableness" of Captain Batson's inspection system. *See generally United States v. Harris*, 5 M.J. 44 (C.M.A.1978). It is well settled that a commanding officer has the responsibility and authority to protect persons and places within his command.

*See Cafeteria and Restaurant Workers Union v. McElroy*, 367 U.S. 886, 890, 81 S.Ct. 1743, 1746, 6 L.Ed.2d 1230 (1961). Such governmental action, however, can infringe on a service member's fourth amendment rights no more than is reasonably necessary to ensure the commander protects these substantial governmental interests. *Brown v. Glines*, 444 U.S. 348, 355–56, 100 S.Ct. 594, 690, 62 L.Ed.2d 540 (1980). Accordingly, this security system must be examined to determine whether its scope was limited in accordance with its legitimate governmental purpose of protecting the barracks' environment. *United States v. Middleton*, 10 M.J. 123 (C.M.A.1981); *United States v. Unrue*, 22 U.S.C.M.A. 466, 47 C.M.R. 556 (1973). *See generally* 3 LaFave *Search and Seizure* § 10.7 (1978).

In appellant's case, the Government, for some unexplained reason, did not introduce as evidence the regulations, standard operating procedure or command policy letters which controlled the operation of this security system. It did, however, introduce evidence that appellant was aware of these procedures, whatever they may be. Such evidence is of little help to this Court in determining whether the scope of the inspection was reasonable. *United States v. Middleton, supra* at 132. Moreover, in the absence of such evidence, it is impossible to determine whether the appellant validly consented to the search of his box or merely acquiesced to a claim of lawful authority. *Id.* at 132–33.

As indicated in the decision of the Court of Military Review, some evidence was introduced concerning the operation of this security system, namely, that the security system was designed to prevent barracks larcenies and the use of drugs and alcohol in the barracks environment. Captain Batson, the commanding officer in charge of the security system, and Staff Sergeant Pritchard, the Charge of Quarters for the appellant's barracks on the night in question, testified as to some details of this system. Their testimony indicates that:

1. No body searches were permitted.

2. All persons entering or leaving the barracks were required to sign a log.

3. The Charge of Quarters was to "monitor" the flow of items to and from the barracks.

Nevertheless, their testimony was conflicting or unclear as to the precise duties and responsibilities of the Charge of Quarters in implementing this "monitoring" policy and plan.

For example, portions of the record of trial indicate some leeway for arbitrariness existed as to when and how extensively Staff Sergeant Pritchard, as the Charge of Quarters, was authorized to inspect the contents of a package. *See United States v. Harris, supra* at 56–57. Moreover, we cannot determine whether, if the appellant refused to answer the Charge of Quarters' question, his package could be immediately inspected by the Charge of Quarters or be seized and later inspected by the commanding officer or be searched at all. *United States v. Middleton, supra* at 128. Finally, it is not clear if the appellant or any other person could avoid answering the Charge of Quarters' question and subsequent inspection by electing not to enter the barracks and withdrawing therefrom. *United States v. Unrue, supra. See United States v. Miles*, 480 F.2d 1217 (9th Cir. 1973), *cert. denied*, 414 U.S. 1008, 94 S.Ct. 369, 38 L.Ed.2d 245 (1973); *United States v. Vaughan*, 475 F.2d 1262 (10th Cir. 1973). *Cf. United States v. Ellis*, 547 F.2d 863 (5th Cir. 1977). Without such critical information as to the nature of the governmental intrusion, we simply cannot determine whether this barracks security system was reasonable government action for fourth amendment purposes. *See Brown v. Glines, supra*, and *United States v. Middleton, supra*.

■ This Court's decision in this case does not necessarily condemn the inspection system utilized by Captain Batson to accomplish an important mission of his command. As recently pointed out by Justice Powell in *Brown v. Glines, supra* 444 U.S. at 357, 100 S.Ct. at 601:

Because the right to command and the duty to obey ordinarily must go unquestioned, this Court long ago recognized that the military must possess substantial discretion over its internal discipline.

However, we are requiring prosecutors to demonstrate clearly these command interests and methods on the record when challenged at court-martial. To do less would be to ignore our duty concerning the residual constitutional rights of service members. *Burns v. Wilson*, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed.2d 1508 (1953).

■ The decision of the United States Army Court of Military Review is reversed as to Charges I and II, the specification of each of those Charges, and the sentence. The findings of guilty relating thereto are set aside. The record of trial is returned to the Judge Advocate General of the Army for submission to the Court of Military Review. In its discretion that Court may set aside the sentence and order a rehearing on the charges and specifications affected by our decision and the sentence, or it may dismiss the affected charges and specifications and reassess the sentence on the basis of the remaining findings of guilty.

Chief Judge EVERETT concurs.

COOK, Judge (dissenting in part):

A barracks building is government property. The occupants have no reasonable expectation of privacy in respect to any use they wish to make of the corridors, commonways, or service areas of the building. The following extract from my dissenting opinion in *United States v. Miller*, 1 M.J. 367, 368, 369–70 (C.M.A.1976), sets out the scope of the government's constitutional right to exercise control over its own property.

As regards military property, the Supreme Court has held that the Government can exercise "unfettered control." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 896, 81 S.Ct. 1743 [1749], 6 L.Ed.2d 1230 (1961). It has described the nature of the Government's authority over such property as "proprietary." *Id.* at 896, 81 S.Ct. 1743 [at 1749]. More recently, the Supreme Court remarked on the different character of Government interaction with the general populace in the civilian community from that of its interaction with members of the military community. It

said that in the military, "unlike the civilian situation, the Government is often employer, landlord, provisioner, and lawgiver rolled into one." *Parker v. Levy*, 417 U.S. 733, 751, 94 S.Ct. 2547, 2559, 41 L.Ed.2d 439 (1974).

This Court has recognized the right of the Government, in its proprietary character, to protect Government property from misuse by one to whom it has been entrusted for a public purpose. In *United States v. Poundstone*, 22 U.S.C.M.A. 277, 46 C.M.R. 277 (1973), the Court upheld the right of a military commander to order a search of Government vehicles to determine whether unauthorized substances were concealed therein, without regard to the constitutional requirements for search and seizure that would obtain if the search had been of a private vehicle belonging to a member of the military. In *United States v. Weshenfelder*, 20 U.S.C.M.A. 416, 43 C.M.R. 256 (1971), the Court upheld the search of a Government desk assigned to a person for public purposes as being outside the purview of the Fourth Amendment. *See also United States v. Simmons*, 22 U.S.C.M.A. 288, 46 C.M.R. 288 (1973) (Darden, C. J., concurring). In *United States v. Troy*, 22 U.S.C.M.A. 195, 46 C.M.R. 195 (1973), the Court indicated that constitutional restraints as to search and seizure of the private property of an individual do not apply to a search of the common areas of a barracks used as living quarters.

In my opinion, the record of trial manifests a clear purpose to effect the government's proprietary right to protect its own property. It further demonstrates that the means adopted by the Government to achieve its legitimate purpose do not unreasonably intrude into the occupants' right of privacy respecting their person and private effects when they enter upon, or depart from, the areas subject to direct government control. *See United States v. Harris*, 5 M.J. 44, 67 (C.M.A.1978) (Cook, J., dissenting). I would, therefore, uphold the trial judge's ruling allowing the disputed items into evidence and affirm the decision of the United States Army Court of Military Review.