UNITED STATES

v.

Staff Sergeant Steven D. McCARTY,
FR 539–66–6921, United States
Air Force.

ACM 26048.

U.S. Air Force Court of Military Review.

Sentence Adjudged 24 Oct. 1986.
Decided 20 Nov. 1987.

Appellate Counsel for the Appellant: Bryan G. Hershman, Tacoma, Wash., Colonel Leo L. Sergi and Major William J. Reichart.

Appellate Counsel for the U.S.: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Major Carole W. Hanson.

Before HODGSON, FORAY and HOLTE, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

The appellant was convicted of using and distributing marijuana. The government's case rests on the testimony of Sergeant Alan Hrabe and his wife, Kathy. Sergeant Hrabe admitted to using marijuana "possibly a thousand times," and Kathy acknowledged substantial use of marijuana, lysergic acid diethyamide (LSD), cocaine, and amphetamines. In late April 1986, Kathy Hrabe became an Office of Special Investigations (OSI) informant in return for protection from local drug dealers to whom she owed money. Mrs. Hrabe testified that she first met the appellant at the base gas station on 28 May, when she and a friend, Bridget Dorsch, stopped to put air in the tires. The appellant was driving a 1968 Mustang which he indicated was for sale. During the course of the conversation about the car, the appellant stated he used marijuana as well as cocaine, LSD and amphetamines.[1] While at the gas station, Mrs. Hrabe saw a bag of marijuana and a smoking device in the center console of the appellant's car.

Mrs. Hrabe displayed an interest in buying the appellant's car for the asking price of $3,000.00 and offered to lend him an additional $1,500.00 so he could buy a 1980 Chevelle for $4,500.00. Apparently, she thought she would be given a substantial reward, i.e., approximately $200,000.00 from civilian police authorities for information regarding the Green River killer—a serial murderer whose victims are generally found buried in the vicinity of the Green River which is near Tacoma, Washington. She also indicated if the reward money was not immediately available, the $1,500.00 could be borrowed from her grandmother. The next day, Mrs. Hrabe told the OSI of her conversation with the appellant.

That same day, 29 May, the appellant drove his car to the Hrabe residence where he met Sergeant Hrabe for the first time. Sergeant Hrabe looked at the car, drove it and the appellant left with his car.

Two days later Sergeant Hrabe drove to the appellant's house to get his wife. While he was there, the appellant took some marijuana from a tupperware dish, and, using a waterpipe he borrowed from a neighbor, used the substance. In addition to the incident just described, Mrs. Hrabe testified she saw the appellant use marijuana at a party at his house on 31 May. On 2 June, Mrs. Hrabe gave the OSI a quantity of marijuana she stated she had received from the appellant. Subsequently, on 9 June, Mrs. Hrabe made a "controlled buy"[2] of a small amount of marijuana from the appellant which she gave to the OSI.

---

1. The appellant was acquitted of using and distributing amphetamines.

2. A "controlled buy" is so called because the individual making the purchase is under the operational control of the accompanying police officers. *United States v. King,* 17 M.J. 1099 (A.F.C.M.R.1984).

The appellant has assigned eight errors ranging from ineffective assistance of counsel to the insufficiency of the evidence to support the conviction. While none of those claimed errors justifies overturning his conviction, a discussion of some is warranted.

## I

■ Appellate defense counsel contend that the trial defense counsel did not provide "effective assistance" to the appellant at trial. The basis for this assertion is, in their view, the failure of counsel at trial to call the appellant as a witness to testify as to entrapment which appellate counsel suggest was the only viable defense. They buttress this argument by claiming that "... it is virtually impossible to successfully use an entrapment defense without putting the defendant on the stand." Without assessing how successful any entrapment defense may be viewed by members, the issue of entrapment may be raised by the accused either through his own evidence or through cross-examination of government witnesses. *United States v. VanZandt*, 14 M.J. 332 (C.M.A.1982). Here the trial judge found that the defense of entrapment had been fairly raised and he fully and correctly instructed the members on this issue.

In *United States v. Mansfield*, 24 M.J. 611 (A.F.C.M.R.1987), we discussed at length the standard to be applied to claims of ineffective representation by counsel. We said that "Disagreements as to the strategic or tactical decisions made at the trial level by defense counsel will not support a claim of ineffective assistance of counsel so long as the challenged conduct has some *reasoned* basis." (Emphasis in original.) *Mansfield* at 617.

In responding to this claim of ineffective assistance of counsel, the trial defense counsel stated that the appellant was fully aware of his right to testify on the merits. The option of his testifying was discussed throughout the trial. Defense counsel indicated he considered the reasonable doubt defense to be the better choice in light of Kathy Hrabe's prior drug usage and repu-

tation. He told the appellant that if he did testify he would have to admit to drug involvement prior to the time he met Mrs. Hrabe. This, in counsel's opinion, would corroborate substantial portions of her testimony and seriously lessen the effectiveness of an attack on her credibility. Finally, the appellant, when testifying during a pretrial motion, displayed a flippant and disrespectful attitude. All of these factors convinced his attorney that having the appellant take the stand was not an acceptable risk.

■ Appellate defense counsel also argue that the appellant's trial defense counsel failed to call other witnesses who would have supported his version of the facts. One of these witnesses was the appellant's sister who knew the appellant was a marijuana user and who herself had used amphetamines with Mrs. Hrabe during a visit with the appellant. Trial defense counsel concluded that her association with the drug culture would adversely affect the court's perception of her brother. The appellant's neighbor could have also been called as a witness, but he would have had to admit that he provided the marijuana the appellant gave Mrs. Hrabe and would have corroborated her testimony. All in all, the testimony of the appellant's sister and next door neighbor created a high level of risk with little corresponding gain.

As we stated in *Mansfield, supra,* appellate courts will not review the wisdom of a defense tactic if it has a plausible basis which in turn rests on the facts and circumstances before the defense counsel. On the facts before us we find that the appellant's trial defense counsel displayed the competence and skill one expects of a trial advocate. His defense of the appellant reflects a reasoned basis for his decisions and shows a carefully weighed assessment of the strengths and weaknesses of his evidence as well as the government's. The claim of ineffective assistance of counsel is totally lacking in merit.

## II

The pretrial investigating officer took Kathy Hrabe's testimony for approximate-

ly three hours before she left the hearing stating she had to go to work. She never returned although the investigating officer delayed the proceeding twice in an attempt to secure her presence.

The appellant now argues he was denied his right to a "thorough and impartial [pretrial] investigation" because Mrs. Hrabe was never available for cross-examination.

■ Article 32b of the Uniform Code of Military Justice states that a pretrial investigation shall afford an accused a full opportunity to cross-examine the witnesses against him if they are *available*. We will assume, *arguendo*, that Mrs. Hrabe's initial appearance at the pretrial investigation made her available as a witness and thus subject to cross-examination. We will also assume that her subsequent refusal to return to the hearing extinguished that right. We find authority for this conclusion in *United States v. Chuculate*, 5 M.J. 143 (C.M.A.1978), where the Court of Military Appeals stated that the "... mere refusal of a civilian to testify, even in the face of the apparent failure of the code to provide the ... investigating officer with subpoena power does not *eo ipso*, nullify the defense right to cross-examine." It would seem to follow that the right to cross-examine *available witnesses* is a substantial pretrial right that is entitled to judicial enforcement upon a timely request by an accused. *United States v. Mickel*, 9 U.S.C.M.A. 324, 26 C.M.R. 104 (1956). *See generally United States v. Ledbetter*, 2 M.J. 37 (C.M.A. 1976) and *United States v. Chestnut*, 2 M.J. 84 (C.M.A.1976).

■ The failure to make a timely objection to a defect in a pretrial investigation ordinarily constitutes a waiver of that defect unless it results in a miscarriage of justice. *United States v. Mickel, supra; United States v. Holstron*, 37 C.M.R. 910 (A.F.C.M.R.1967); *United States v. Garner*, 40 C.M.R. 778 (A.B.R.1969). Here the trial defense counsel made a tactical decision not to request the trial judge to reopen the pretrial investigation. We find his reasons for doing so to be sound.

## III

The appellant next argues that the "outrageous misconduct" of Kathy Hrabe, the government informant, mandates reversal of his conviction. There is no dispute that almost immediately after Mrs. Hrabe's chance encounter with the appellant at the base gas station she had sexual relations with him numerous times and was the moving party in arranging a *menage a trois* between herself, the appellant and a third party. It is also clear that the OSI was unaware of Mrs. Hrabe's sexual activities with the appellant, and did not instigate or condone her relationship with the appellant.

■ The outrageous conduct doctrine bars prosecution only in that narrow category of cases where the government is responsible for physical or psychological brutality that shocks the conscience of a civilized society. *United States v. Patterson*, 25 M.J. 650 (A.F.C.M.R.1987). In *United States v. Simpson*, 813 F.2d 1462 (9th Cir.1987), a federal appeals court addressed a situation strikingly similar to the case at hand. In *Simpson*, the FBI employed a known prostitute, heroin user and fugitive from Canadian drug charges as an informer in the investigation of Darrel Simpson, a suspected heroin dealer. The woman, posing as a stranded traveler, enticed Simpson to give her a ride into town. Before long the two became sexually intimate. Later she introduced Simpson to undercover FBI agents who bought heroin from him. Simpson and two others were arrested on drug charges.

The District Court dismissed the indictment on the grounds that the FBI's conduct in recruiting and using the woman was so offensive that it violated the Due Process Clause of the Fifth Amendment. His ruling was based, in part, on the FBI's "manipulation" of the woman into becoming an informer and their continued use of her after learning that she and Simpson were sexually involved. These two factors, however, are not present in the case before us as Mrs. Hrabe approached the OSI with an offer to help in return for protection, and the investigators were unaware of her sexual involvement with the appellant.

The appeals court reversed the lower court holding that, *in toto*, the government's conduct was not outrageous as a matter of law and was not "shocking to a universal sense of justice." The court went on to say that "... It is unrealistic to expect law enforcement officers to ferret out criminals without the help of unsavory characters." We reach the same conclusion here and find no basis to overturn the appellant's conviction on due process grounds based on a sexual relationship between himself and the government informant.

■ Appellate counsel also suggest that Mrs. Hrabe's eagerness to buy the appellant's car for $3,000.00 and to lend him an additional $1,500.00 was "outrageous misconduct" which unfairly contributed to the commission of the offenses attributed to him. The trial transcript does not support this assertion. The record clearly establishes that the appellant's misconduct was not a "government-manufactured crime." *United States v. Bogart*, 783 F.2d 1428 (9th Cir.1986). Here also, we find no basis to reverse the appellant's conviction.

### IV

Finally, the appellant maintains that the evidence is insufficient to establish his guilt beyond a reasonable doubt. He also claims that he should have been permitted to assert entrapment as a defense and asks that his case be remanded to the lower court with a direction to instruct on the defense of entrapment. This assignment of error is puzzling as the trial judge gave an instruction on the entrapment defense and the trial defense devoted a sizable portion of his closing argument to this issue.

■ The main thrust of the appellant's argument on the sufficiency of the evidence is that Kathy Hrabe is a lying, promiscuous drug abuser whose testimony should be totally rejected. While this characterization of her is reasonably accurate, crucial portions of her testimony were corroborated. For example, Sergeant Hrabe was also present on one occasion along with his wife when the appellant used marijuana. Further, one of the allegations of distribution was supported by evidence obtained through a controlled buy orchestrated by the OSI. The use of informants by law enforcement officers in drug cases is an accepted and necessary practice. *United States v. Harms*, 14 M.J. 677 (A.F.C.M.R.1982). The weight and credibility given an informant's testimony is a matter for the determination of the court members. Here, they had before them all facets of Mrs. Hrabe's life style and sexual proclivities. *See United States v. Tippy*, 25 M.J. 121 (C.M.A.1987). In assessing all the evidence, including the testimony of Mrs. Hrabe, the members found the appellant guilty of using and distributing marijuana. We also are convinced beyond a reasonable doubt of his guilt. Article 66(c), U.C.M.J.; *United States v. King*, 17 M.J. 1099 (A.F.C.M.R.1984).

### V

The remaining assigned errors are resolved against the appellant. *United States v. Reynolds*, 24 M.J. 261 (C.M.A. 1987); *United States v. Trottier*, 9 M.J. 337 (C.M.A.1980); *United States v. Young*, 15 M.J. 857 (A.F.C.M.R.1983). The findings of guilty and the sentence are

AFFIRMED.

Senior Judge FORAY and Judge HOLTE concur.