## UNITED STATES

v.

**Staff Sergeant Craig R. BURRIS, FR 221–46–4070, United States Air Force.**

### ACM 26259.

U.S. Air Force Court of Military Review.

Sentence Adjudged 28 May 1987.

Decided 3 Feb. 1988.

---

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Major Mark R. Bell.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Captain Marc Van Nuys.

Before HODGSON, FORAY and HOLTE, Appellate Military Judges.

DECISION

HODGSON, Chief Judge:

Notwithstanding his plea to the contrary, the appellant was convicted of a single allegation of drug abuse based on the results of a random urinalysis inspection which disclosed the presence of benzoyle-cognine, a metabolite of cocaine, in his urine.[1]

■ Appellate defense counsel first invite our attention to the appellant's claim at trial that the inspection that resulted in the taking of his urine was not properly conducted. The appellant contends that the testing was ordered by Colonel Mabry who was not his squadron commander, but a staff officer. While Mil.R.Evid. 313(b) does not limit the authority to conduct inspections *solely* to commanders, we will assume, *arguendo*, that the rule contains this limitation. See Saltzburg, Schinasi and Schlueter, *Military Rules of Evidence Manual*, Mil.R.Evid. 313, Drafter's Analysis, pg. 237.

To better understand the assigned error it is necessary to review the command

1. The screening radioimmunoassay (RIA) test on the appellant's urine disclosed cocaine metabolites in excess of 300 nanograms per milliter (ng/ml) which is the Department of Defense cutoff for determining a sample positive by RIA. The confirming gas chromatography/mass spectrometry (GC/MS) requires 150 ng/ml of cocaine metabolites in a specimen before it can be called positive by GC/MS testing. The appellant's urine sample contained 47,968 ng/ml of the cocaine metabolite.

structure as it relates to this case. Colonel Hobgood is the wing commander. Colonel Mabry is the deputy commander for civil engineering and occupies a staff position. Lieutenant Colonel Chisolm is the commander of the Civil Engineering Squadron and the appellant's commander. Colonel Mabry is Chisolm's functional supervisor.

The record establishes that in June 1986, Colonel Chisolm ordered a urinalysis inspection of his squadron, and directed that Master Sergeant Mitchell, the acting first sergeant, make the necessary arrangements. In doing so, Mitchell was advised by the base legal office to delay the inspection for approximately 90–120 days. The inspection was delayed, but Chisolm continued to ask Mitchell what its status was. By mid-September, the delay advised by the legal office had expired, and Mitchell began to put together the inspection procedure. In this regard, he contacted Colonel Mabry for assistance in selecting the date and the method to determine those to be tested. Apparently, this occurred some time in late September while Chisolm was TDY.

Mitchell, in an undated letter to Mabry, recommended that 7 October 1986 be the inspection date and those selected to be tested chosen in the following manner: three separate sheets of paper would marked with the following phrases, "EVERY THIRD PERSON, EVERY FOURTH PERSON and EVERY FIFTH PERSON." Colonel Mabry would then select one of the sheets as the increment of selection. Mabry agreed to the date and method of selection. When Chisolm returned from his TDY, he was told of the arrangements made for the urinalysis inspection, including the date and method used to select the participants. He adopted Mitchell's preparations. However, the numerical sequence actually employed is unclear as Mitchell testified that every "second, third or fourth name" was used.

■ Appellate defense counsel attempt to bolster trial defense counsel's argument that the inspection was improperly conducted by additionally urging that the inspection was not "random" as the entire squadron was not eligible to be tested when the alleged random selection rotation was made by Colonel Mabry. They argue:

> By putting only the number two, three, and four in the selection pool, all individuals who appeared on the alpha roster in numeric position one and all other prime numbers greater than or equal to five were not eligible to be tested. Even more importantly, those individuals who appear in numeric positions divisible by 12 were targeted to be tested because their position was a guarantee[d] draw.

Neither Mil.R.Evid. 313(b) nor the regulations governing the Air Force's drug abuse testing program [2] require that drug testing be conducted on a random basis. The Rule states that

> If [the] purpose of an examination is to locate ... contraband, and if: (1) the examination was directed immediately following a report of a specific offense in the ... organization ... and was not previously scheduled; (2) specific individuals are selected for examination; or persons examined are subjected to substantially different intrusions during the same examinations, the prosecution must prove by *clear and convincing* evidence that the examination was an inspection within the meaning of this rule. (*Emphasis added.*)

An inspection is reasonable and lawful so long as it is not a subterfuge for a search for criminal evidence. *United States v. Flowers*, 23 M.J. 647 (N.M.C.M.R.1986). A random selection of those being tested is an effective method of establishing that an accused was not singled out to be searched under the guise of an inspection.

■ The evidence by the government to support the admission of the appellant's urine sample clearly established that the inspection was properly ordered by Colonel Chisolm, and was not a subterfuge for a search. First, Chisolm was not looking for a particular individual whom he suspected

---

**2.** Air Force Regulation 30–2, *Social Actions Programs,* 31 July 1986, and Air Force Regulation 160–23, *Drug Abuse Testing Program,* 18 April 1986.

of drug abuse. Second, he did not suspect the appellant of any offense. And third, the appellant was not subjected to any closer scrutiny during the examination. Indeed, the trial defense counsel, in responding to a claim of inadequate representation lodged by the appellant, stated in a posttrial affidavit that he investigated the possibility that the inspection was a subterfuge for an illegal search and found no evidence to support such a claim. In summary, the inspection met the standard imposed by Mil.R.Evid. 313 and the trial judge correctly denied the motion to suppress.

Appellate defense counsel also invite our attention to a letter submitted by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982). Therein, the appellant claims that his appointed defense counsel was ineffective;[3] the trial judge was not fair and impartial because he had presided over an earlier trial involving the same urinalysis inspection; and his urinalysis inspection was not properly conducted. Those errors not already discussed are resolved against the appellant. *United States v. McCarty*, 25 M.J. 667 (A.F.C.M.R.1987); *United States v. Kratzenberg*, 20 M.J. 670 (A.F.C.M.R. 1985); *see generally United States v. Haynes*, 44 C.M.R. 487 (A.C.M.R.1971). The findings of guilty and the sentence are

AFFIRMED.

Senior FORAY and Judge HOLTE concur.

---

**3.** Government's MOTION TO FILE AFFIDAVIT is GRANTED.