UNITED STATES

v.

**Sergeant Barry L. HARMS, FR 511–70–1233, United States Air Force.**

ACM 23486.

U. S. Air Force Court of Military Review.

Sentence Adjudged 7 Jan. 1982.

Decided 15 Sept. 1982.

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain J. Laurens Tullock.

Appellate Counsel for the United States: Colonel James P. Porter, Colonel Kenneth R. Rengert and Captain Richard O. Ely, II.

Before HODGSON, POWELL and MILLER Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

On 30 October 1981, the accused bought approximately one and one-third pounds of marijuana from two undercover Office of Special Investigations (OSI) agents who were posing as drug sellers. The two agents had let it be known they could supply interested individuals with substantial amounts of marijuana. Their base of operations was a local hotel room; one agent acted as the business partner and the other

was armed with a shotgun. Once the accused became aware that marijuana was available, he seized the opportunity to buy it. He was immediately arrested once the transaction was completed.

After unsuccessfully attempting to suppress a video tape of the transaction, the accused entered a plea of guilty to wrongfully possessing marijuana. He was convicted pursuant to his pleas, and sentenced to a bad conduct discharge, confinement at hard labor for 60 days, and reduction to airman basic.

On appeal the accused concedes that his predisposition to buy the marijuana renders an entrapment defense unavailable, but argues that the Government's outrageous conduct in supplying the contraband denied him due process.

The question before us was initially raised in the companion case of *United States v. Simmons*, 14 M.J. 624 (A.F.C. M.R.1982). In affirming Simmons' conviction, Senior Judge Kastl stated:

We first note there was insufficient evidence developed at trial that the OSI induced the accused to commit unlawful acts in order to prosecute him. Furthermore, we find that Simmons has failed to establish the factual predicate of repugnant, over-zealous government misconduct necessary for relief based upon over-reaching governmental misconduct [citations omitted].

In the instant case, assuming *arguendo* that the due process issue survived the accused's guilty plea, we find sufficient evidence in the record to resolve the issue of whether the government's role amounted to outrageous conduct which denied him due process. We find no such outrageous conduct.

Federal decisions have held that fundamental fairness will not permit an accused to be convicted of a crime in which police conduct was outrageous. *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1923); *United States v. Twigg*, 588 F.2d 373 (3d Cir. 1978). In *United States v. West*, 511 F.2d 1083 (3d Cir. 1975), a conviction was reversed primarily on fundamental

fairness grounds where the government agent set the accused up in an illicit activity by supplying him with narcotics and then introducing a second government agent to him as a prospective buyer. The result was the same in *Greene v. United States*, 454 F.2d 783 (9th Cir. 1971), where an undercover agent reestablished contact with the defendants after their previous arrest on bootlegging charges. For over two years the agent was involved in the defendant's operations—offering to supply materials, an operator, and location for the still, and actually supplying sugar at wholesale prices. Additionally, the agent bought all the liquor produced by the still. In both cases the appellate courts held that the government's role passed the point of toleration. *See United States v. Twigg, supra.*

Conversely, the Federal courts found acceptable a government agent's supplying the necessary ingredient to manufacture an illegal drug. *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *United States v. Smith*, 538 F.2d 1359 (9th Cir. 1976); *see also United States v. Leja*, 563 F.2d 244 (6th Cir. 1977).

■ Attempting to draw general principles of law from the cases cited is difficult. There is a tendency for the due process defense to become blurred with the entrapment defense, notwithstanding the Supreme Court's statement they are separate and distinct. *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). A successful due process defense must be predicated on intolerable government conduct which goes beyond that necessary to sustain an entrapment defense. *United States v. Jannotti*, 673 F.2d 578 (3rd Cir. 1982). In our view, the Government's conduct in the case *sub judice* facilitated the discovery and suppression of ongoing illicit traffic in drugs and was within the bounds of legitimate government activity. The social objective it served is clearly justified. *United States v. West, supra.* Also, we may consider the nature of the crime and

the tools available to law enforcement agencies to combat it. *United States v. Twigg, supra,* footnote 6; *Harrison v. State,* 442 A.2d 1377 (Del.1982). Drug transactions can easily elude detection since both parties have an interest in keeping them hidden. *United States v. Jannotti, supra.* Further, infiltration of criminal operations by undercover agents is an accepted and necessary practice. *United States v. Twigg, supra.*

■ The accused further suggests that law enforcement officials must have a reasonable suspicion of his criminal involvement before an undercover operation such as the one under review can be commenced. We disagree.

■ Where the conduct of the investigation itself does not offend due process, the fact that the investigation may have begun without probable cause does not bar the conviction of those who rise to the bait. *United States v. Myers,* 635 F.2d 932 (2d Cir. 1980); *cert. denied,* 449 U.S. 956, 101 S.Ct. 364, 66 L.Ed.2d 221 (1980); *United States v. Jannotti, supra.*

In sum, we find no overreaching by the Government so as to violate the accused's due process rights. There is clear and compelling evidence in the record that the initiative to engage in drug trafficking originated with the accused. During the *Care* inquiry * the accused related that upon being awakened by a friend and told of a chance to buy marijuana, he grasped the opportunity without hesitation. He stopped at the credit union to withdraw funds for the transaction. There was no pressure, threat or force exerted on him. The law enforcement officials merely presented the accused with an opportunity for crime which he seized. *United States v. Simmons, supra; Harrison v. State, supra.* Here the Government's involvement does not reach the level that was present in *West, Greene,* and *Twigg, supra.* The accused's willingness to buy marijuana was the crucial factor in this involvement—not the Government's investigation. It follows that the

outrageous Government conduct necessary to void the accused's conviction is not present in the facts of this case. But see *United States v. Kelly,* 539 F.Supp. 363 (D.C.D.C.1982).

Pursuant to *United States v. Lynch,* 13 M.J. 394 (C.M.A.1982), an administrative credit for unlawful pretrial confinement is ordered. *United States v. Pettersen,* 14 M.J. 608 (A.F.C.M.R.1982). For the reasons heretofore stated the findings of guilty and the sentence are

AFFIRMED.

MILLER, Judge (concurring):

I disassociate myself from any implication in the Chief Judge's opinion that factual situations similar to those he summarized from *United States v. West,* 511 F.2d 1083 (3rd Cir. 1975), and *Greene v. United States,* 454 F.2d 783 (9th Cir. 1971), would be viewed by this Court as conduct so "outrageous" as to violate military due process.

In my view, while some future conduct on the part of the government may well be so "outrageous" as to deprive an accused of military due process, it is neither fitting nor possible to provide either specific or hypothetical examples of such conduct at this time. Our identification of such conduct, when and if it is brought before this Court, will be based upon a detailed case-by-case, *Daigle v. Warner,* 490 F.2d 358 (9th Cir. 1974), examination of *all* the facts of record, including consideration of military exigency requirements relating to maintenance of a disciplined fighting force in a nuclear age, *United States v. Trottier,* 9 M.J. 337, pp. 345–348 (C.M.A.1980); *United States v. Whiting,* 13 M.J. 804 (A.F.C.M.R.1982) (Hodgson, C. J., dissenting).

Paraphrasing the concurring remarks of Justice Stewart when, in *Jacobellis v. Ohio,* 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964), his brothers attempted to define further the kinds of material embraced within the term "hard-core pornography", I will not today attempt to further describe the kinds of government conduct that, within a

---

* *United States v. Care,* 18 U.S.C.M.A. 535, 40     C.M.R. 247 (1969).

**680**

military setting, are so outrageous as to deprive an accused of military due process. Perhaps I could never succeed in intelligently doing so. But I will know it when I see it, and the conduct involved in this case is not that.

POWELL, Senior Judge, absent.