**UNITED STATES, Appellee,**

v.

**Private E2 Marvin R. FRAZIER, 356–58–0630, United States Army, Appellant.**

**ACMR 8901967.**

U.S. Army Court of Military Review.

16 July 1990.

For Appellant: Captain Brian D. Bailey, JAGC, Captain Allen F. Bareford, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Martin D. Carpenter, JAGC, Captain Marcus A. Brinks, JAGC (on brief).

Before DeFORD, KANE and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial composed of members of wrongful possession and distribution of hashish in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a. His approved sentence includes a bad-conduct discharge and reduction to the grade of Private E1.

After initial briefs were filed, we specified the following issues:

I. DO THE FACTS AND CIRCUMSTANCES OF THE CASE AT BAR CONSTITUTE OUTRAGEOUS GOVERNMENT CONDUCT WHICH VIOLATED THE APPELLANT'S RIGHT OF DUE PROCESS?

II. IS THE EVIDENCE OF RECORD SUFFICIENT TO PROVE BEYOND REASONABLE DOUBT THAT THE APPELLANT WAS NOT ENTRAPPED?

III. IS THE EVIDENCE OF RECORD SUFFICIENT TO SUPPORT A CONVICTION FOR WRONGFUL DISTRIBUTION OF MARIJUANA (SPECIFICATION 2 OF THE CHARGE)?

I

The appellant moved, pursuant to Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial [hereinafter

R.C.M.] 907, for dismissal of the charges on the grounds that he had been denied due process of law by agents of the Air Force Office of Special Investigations (OSI) who had apprehended him during a "reverse sting" operation. A "reverse sting" operation in the context of this case, is a covert police action in which government agents lure individuals bent on using drugs into purchasing illegal drugs from them and then apprehend them after consummating the transaction. Such operations are permissible under OSI regulations and have been held lawful by the Air Force Court of Military Review. *United States v. Harms*, 14 M.J. 677 (A.F.C.M.R.1982). Conversely, regulations governing the investigative activities of the Army Criminal Investigation Command (CID) effectively proscribe such operations by personnel assigned to or working for that organization.[1]

The military judge, citing the holding in *Harms*, ruled:

> [T]hat the subject so-called reverse sting operation conducted at Ramstein Air Base on or about the 18th of March, 1989, was initiated, designed, operated, controlled and conducted by OSI of the Department of the Air Force, and was done so without the advice, consent or instigation of any US Army agent.

> \* \* \* \* \* \*

> [T]hat the conduct of the investigation itself does not offend due process.

> \* \* \* \* \* \*

> It's noted that in making these findings that I find the law and reasoning stated in the Air Force Court of Military Review, the case of *United States v. Harms*, at 14 M.J. 677, as persuasive.

The appellant was assigned to an Army air defense unit located on Ramstein Air Base in West Germany. In mid-March 1989, a soldier in appellant's unit, Private Epps, was apprehended by OSI agents at the base for possession of hashish. Epps agreed to cooperate with the OSI by acting as an informant and protagonist during the aforementioned "reverse sting" operation. The operational plan called for Epps to attend a unit barbecue on the base in the company of a female OSI agent pretending to be his girlfriend. The pair would invite individuals known to be interested in buying or using drugs to a private party after the barbecue at a room in the base guest house. At the room, the unsuspecting individuals would find a party atmosphere complete with music, food, alcoholic beverages and three women appearing to be guests but who, in actuality, were OSI agents. One of the women would be selling hashish upon request. In an adjacent room, several male OSI agents would monitor the activities in the room with a closed-circuit television camera and video tape recorder. If an illicit drug transaction took place, a prearranged signal would be given and the male agents would burst into the room and apprehend those involved.

Epps testified that several days prior to the barbecue he extended invitations to the party to eight to ten individuals and invited an additional twenty to twenty-five individuals while at the barbecue. He targeted persons he knew were drug users. Epps knew that appellant used drugs because Epps had previously smoked hashish with him. The afternoon of the barbecue, Epps invited appellant to the party when appellant inquired about its location and expressed interest in buying or using drugs.[2]

---

**1.** CID Regulation 195–8, Para. 2–13, Criminal Investigation Drug Suppression Program, 1 June 1988 provides in pertinent part:

    a. Under no circumstances, even to facilitate investigative activity, will USACIDC personnel or personnel acting on behalf of USACIDC in drug suppression activities, engage in the illicit possession or distribution of controlled substances or direct that others do so.

    b. Under no circumstances will USACIDC personnel or personnel assigned to drug suppression duties supply controlled substances

to any source, suspect or subject for any purpose.

**2.** During the hearing on the motion, Epps testified:

> I was standing by the picnic table, which was the—like our main point for everything.... And Private Frazier said, "Epps, come here for a minute," and we walked out near where some guys were throwing a frisbee and playing basketball. And he said, "What's the deal", and I said, "What do you mean?", and he said, "What's going on later?", and so, "I

That evening, several groups of individuals attending the party were apprehended for buying drugs from one of the female OSI agents. Appellant was among four individuals in the second group to be apprehended after he had purchased four one-gram packets of hashish from an agent.

The record reveals that after the appellant entered the room, he was asked by the agent: "What are you here for?"; "What do you want?"; "Who's got the money?" He responded by saying he wanted "the stuff," meaning illegal drugs. After learning that the agent was selling hashish at a cost of six dollars per gram, the appellant collected the money from the other three individuals and gave it to the agent in exchange for the drugs.[3] As appellant received the four packets of hashish, one of the appellant's cohorts demanded his "piece." Whereupon an agent took one of the packets from appellant's hand and passed it to the individual.

There was evidence that the OSI had informed the CID office at a nearby Army installation of the impending operation and of the possibility that Army personnel would be apprehended. There was no evidence to establish that the CID was directly or indirectly involved in the planning or execution of the operation.

## II

■ We hold that the military judge's finding that the appellant was not denied due process by the OSI's actions was factually and legally correct. Therefore, his denial of the defense motion was proper.

The military judge stated he was persuaded by the "law and reasoning" of the Air Force Court of Military Review's holding in *United States v. Harms, supra.* In *Harms,* the accused pled guilty to purchasing marijuana from OSI agents posing as drug sellers. On appeal, he contended that his pleas were improvident on the ground that the agents' conduct in supplying the drug denied him due process. As in this case, the agents in *Harms* dispensed information on base that they could supply marijuana to prospective purchasers. Upon learning that the drug was available, Harms went to a local hotel room where, after purchasing the drugs from the agents, he was apprehended. The court affirmed Harms' conviction with one judge absent. Chief Judge Hodgson held that the accused could assert the due process defense where there was "intolerable government conduct which goes beyond that necessary to sustain an entrapment defense." Likewise, in his concurring opinion, Judge Miller wrote that the defense was available where the conduct was "so 'outrageous' as to deprive an accused of military due process." 14 M.J. at 678, 679. Neither judge however, found a denial of due process on the facts indigenous to the case. The court was influenced by the following factors: the necessity of main-

got a little private party going on for a few people", you know. And he said, "Well, what's going to be there?", and I said, "I'm going to have some hash, some coke, and maybe some acid". And then I told him the room number and how to get there from the barracks.

During the government's case-in-chief, the following dialogue between Epps and the trial counsel transpired:

Q. No, let me try to pick up where we were. I think I asked you which one of you approached the other about the party. I don't know whether you got a chance to answer that or not.

A. When I was at the picnic table, Private Frazier came up behind me and said, "Epps, come here for a minute. Let me talk to you."

Q. Okay, and what did he say?

A. Well, first he said, "What's the deal? You know, what's going on?" And I said, "What

do you mean? About the party?" And he said, "Yeah. What about this party after the barbecue?" I said, "Well, I can get some hash, some coke, and I'm trying to get some acid."

Q. You said there's going to be some hash, coke, and maybe some acid?

A. Yes, sir.

Q. What was the accused's response to that?

A. He asked where the party was going to be.

Q. And did you give him directions to the party?

A. Yes, sir.

Q. What did you tell him?

A. I told him the room number, the building number and, at the time, I pointed the way, 'cause it was just down the street from the battery and take a left turn, and it's right there.

3. The appellant actually paid the agent twenty-five dollars and received one dollar in change.

taining a disciplined fighting force; the accused's initiation of the drug transaction; the absence of governmental pressure, threat or force upon him to buy drugs; and the necessity of using covert action.

Unlike our brethren on the Air Force Court of Military Review, we have not expressly ruled on the legitimacy of "reverse sting" operations in the context of the Due Process Clause. However, in discussing the defense of entrapment, this court has held:

"[I]f the governmental conduct allegedly constituting entrapment violates that 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment," an accused's conviction cannot stand. *United States v. Russell,* 411 U.S. [423] at 432, 93 S.Ct. [1637] at 1643 [36 L.Ed.2d 366 (1973)]; *see also United States v. Spivey,* 508 F.2d 146, 149 (10th Cir.) ("We recognize that, under *Russell,* a positive test for 'outrageous conduct' is, by itself, reason enough for the reversal of a conviction notwithstanding that the defendant was predisposed, and notwithstanding that a criminal otherwise goes free."), *cert. denied,* 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975).

*United States v. Meyers,* 21 M.J. 1007, 1012 (A.C.M.R.1986).

In *United States v. Blais,* 20 M.J. 781, 782 (A.C.M.R.1985), a panel of this court opined that the "due process defense is not raised where a confidential informant furnishes drugs which are to be sold to a government agent by an appellant who is predisposed to deal in such drugs. *See Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976)." Although premised on a slightly different scenario, the holding in *Blais* suggests, on the one hand, that an accused might be able to assert the defense where the government provides the drugs to be sold. On the other hand, the court also intimates that

the claim would fall on deaf ears if made by an accused shown to have been culpably involved in drugs.

The Court of Military Appeals has not decided the issue, but has noted in a recent opinion:

The Supreme Court has recognized the possibility that government tactics might be so outrageous as to violate due process and entitle a defendant to dismiss all the charges against him. *See United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973). *See also Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) (plurality opinion). However, the Court has not yet actually endorsed this concept, and it has not yet granted a defendant relief on these grounds. Furthermore, lower federal courts have not been generous in finding that the actions of government agents violated due process.

*United States v. Clark,* 28 M.J. 401, 406 n. 4 (C.M.A.1989).[4]

■ We hold from the foregoing, that where outrageous conduct by government agents denies an accused due process in the course of a "reverse sting" operation, that the conviction may not stand. We conclude however, as did the military judge, that the conduct of the OSI agents in this case was not so outrageous or intolerable as to have denied the appellant due process with respect to the appellant's commission of the offenses of which he was convicted. Whether particular conduct by the police and their agents is "outrageous" or "shocking" or "offensive to fundamental fairness" depends on the panoply of facts presented by each case. From the record in this case, the evidence establishes that the appellant was an active rather than passive participant in the illegal drug transaction. The only inducement provided to him by the OSI was the passing of information by Epps that there would be a party at

---

**4.** The U.S. Courts of Appeal for the Fourth, Fifth and Eleventh Circuits have held that "reverse sting" operations do not violate an accused's right to due process where the government's conduct was not outrageous. *See United States*

*v. Goodwin,* 854 F.2d 33 (4th Cir.1988); *United States v. Henthorn,* 815 F.2d 304 (5th Cir.1987); *United States v. Walther,* 867 F.2d 1334 (11th Cir.1989).

a local hotel after the barbecue. The more detailed information concerning the time, place and the fact that drugs would be available was given in response to the appellant's inquiry about the party. The agent who sold him the drugs at the party did so only after the appellant initiated the transaction, collected money from his cohorts and paid for the drugs. Furthermore, the record indicates that the OSI targeted individuals against whom the government had an articulable suspicion of their involvement with illegal drugs. We find that their actions in this regard were not so uncontrolled or lacking in circumspection as to be characterized as being "outrageous."

■ Appellant has argued that the Army CID's failure to object to the OSI's operation after learning about it amounts to a violation of CID Regulation 195-8 and exacerbates the egregiousness of the government's conduct. We disagree. The military judge correctly found that the CID did not participate in the operation. Indeed, the fact that it took place entirely within the confines of an Air Force base precluded the CID from exercising its investigative authority on the base without special permission. The only function CID performed was to receive the Army personnel who were apprehended during the operation. Hence, there was no violation of the CID regulation.[5]

### III

■ We further hold that appellant was not entrapped. In *United States v. Vanzandt*, 14 M.J. 332 (C.M.A.1982), the court identified the following rules governing resolution of this issue:

First, the defense is not raised unless the accused's commission of the alleged criminal act is proven beyond reasonable doubt, and there is evidence that the suggestion or inducement for the offense originated with a government agent.

Second, once the defense is raised, the Government must prove that the accused was predisposed to commit the criminal activity and needed only the opportunity to commit the crime. Third, with one limited exception, the issue must be resolved by the fact finder.

\* \* \* \* \* \*

[T]he Government must prove the absence of entrapment beyond a reasonable doubt just like any element of the crime.

Thus the subjective test of entrapment involves balancing the accused's resistance to temptation against the amount of government inducement.

\* \* \* \* \* \*

One last caution should be stated: The latitude given the Government in "inducing" the criminal act is considerably greater in contraband cases (drugs, liquor)—which are essentially "victimless" crimes—than would be permissible as to other crimes, where commission of the acts would bring injury to members of the public. It would appear that, in giving such latitude, courts recognize that the Government needs more leeway in detecting and combating these illicit enterprises.

14 M.J. at 343-44 (footnotes omitted).

The record clearly demonstrates that the appellant had the requisite predisposition to become involved with drugs. The agents' supplying of information about when and where the appellant could engage in that activity does not amount to an improper inducement to him to commit the offenses.

### IV

■ We also find that appellant's conviction of wrongful distribution of hashish is not supported by the evidence of record. In order to prove that the appellant effected a distribution of the hashish, the govern-

---

**5.** We acknowledge the potential applicability of the legal principle that provides "a government agency must abide by its own rules and regulations where the underlying purpose of such regulations is the protection of personal liberties or interests." *United States v. Russo*, 1 M.J. 134,

135 (C.M.A.1975) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954)). In an appropriate case, timely assertion of this principle could influence the outcome of the proceedings in an accused's favor.

ment had to show actual or constructive delivery to another. Manual for Courts-Martial, United States, 1984, [hereinafter M.C.M.1984], Part IV, para. 37c. Here, delivery was accomplished by the OSI agent when she removed the packet of hashish from the appellant's hand and passed it to another purchaser. Therefore, the factual predicate for appellant's conviction is absent and the charge of wrongful distribution of hashish must be set aside.

We have considered appellant's other assignments of error including those raised by him pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982) and find them without merit.

The finding of guilty of Specification 2 of the Charge is set aside and that Specification is dismissed. The remaining findings of guilty are affirmed. We do not believe reassessment of the sentence is an appropriate remedy in the case inasmuch as we have dismissed the more serious of the offenses of which appellant was convicted. *See United States v. Seymore*, 19 M.J. 608 (A.C.M.R.1984). Accordingly, the sentence is set aside and a rehearing on the sentence may be ordered by the same or a different convening authority.

Senior Judge DeFORD and Judge KANE * concur.