**836**

UNITED STATES, Appellee,

v.

Private First Class Stanley R. ST. MARY, 570–41–7704, United States Army, Appellant.

ACMR 9002864.

U.S. Army Court of Military Review.

21 Oct. 1991.

For Appellant: Captain Timothy P. Riley, JAGC, Captain Michael Huber, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Joseph C. Swetnam, JAGC, Captain Marcus A. Brinks, JAGC (on brief).

Before De GIULIO, HAESSIG, and ARKOW Appellate Military Judges.

OPINION OF THE COURT

De GIULIO, Senior Judge:

Appellant was tried by a military judge sitting as a special court-martial for distribution of marijuana in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (1982 & Supp. V 1987) [hereinafter UCMJ]. Contrary to his pleas, appellant was found guilty. He was sentenced to a bad-conduct discharge, confinement for sixty days, forfeiture of $482.00

pay per month for two months, and reduction to Private E1. The convening authority approved the sentence.

Before this Court appellant alleges that the evidence is legally and factually insufficient to disprove entrapment. He further alleges that his conviction violates due process because the government agent was allowed discretion concerning the targeting of suspected drug distributors and the agent chose a target vulnerable to her influence. We disagree with the allegations of error and affirm.

Private First Class (PFC) O, a female soldier, was approached by military criminal investigators and agreed to become a "registered source" to help investigate narcotics cases. PFC O agreed because she wanted a reference for future employment with the Central Intelligence Agency and she wanted to catch soldiers who sold drugs. Appellant had dated PFC O's roommate and had been present with PFC O at parties. On 17 May 1990, PFC O approached appellant at a local club and asked if "he was holding," meaning was he presently in possession of drugs. Appellant said he was not, but that "there should be a guy coming up in a few hours." PFC O asked appellant if he was willing to sell to a friend, another female who was an undercover military police investigator. Appellant agreed. Appellant eventually asked them to meet him at softball practice the next day.

When PFC O met appellant at the softball field, she asked him if he was still willing to sell to her friend. He replied yes, that he would have hashish later that night and to meet him at the club. PFC O immediately went to the club. Shortly thereafter, appellant entered the club. When PFC O asked him, "Do you have it now?" Appellant said no, that he had to take a shower. After he showered and dressed, appellant again went to the bar at the community club. After receiving a nod from appellant, PFC O asked him if he wanted to go outside. He answered, "sure." They went behind the club, PFC O introduced appellant to the undercover agent and appellant sold the agent hashish for 30 German Deutsche marks (DM). When the agent asked if she could buy again, appellant replied, "Sure, I don't see a problem with that at all."

At trial, the undercover agent testified that PFC O talked to appellant at the community club and all three proceeded behind the club. The agent was introduced to appellant. Appellant then sold the undercover agent hashish. She asked if he could sell her more. Appellant replied that he was going to Italy for a softball tournament but to contact him after his return. Subsequently, the agent attempted to make several purchases but was unable to do so.

At trial, appellant stipulated that the substance received by the undercover agent was marijuana in the form of hashish. Two of appellant's close friends testified that they were in the club when PFC O approached appellant. Both stated that when PFC O whispered in appellant's ear, he said no, and made a fanning or slashing motion with his hand.

A sergeant for whom the appellant worked for a short time testified that appellant was a truthful person.

Other defense witnesses attacked PFC O's credibility. PVT K testified that PFC O did not tell the truth and that, in her opinion, PFC O's reputation in the community was that she did not tell the truth often. PVT K and PFC O, however, had some problems as rivals over a boyfriend, Steve. Steve testified that, while dating PFC O, she told him she had used marijuana with some marines, while in training. He did not believe she was a truthful person and would not believe her under oath. Steve's "break up" with PFC O was not friendly. Steve was administratively discharged for misconduct after a court-martial conviction for severely beating PFC O's old boyfriend.

Appellant testified that he had considered PFC O a friend and that they had sex once while she was drunk.[1] Rumors were started that they had sex, which PFC O attributed to appellant. When PFC O

---

1. This incident occurred before PFC O became a "registered source."

asked whether they had sex because she couldn't remember, appellant told her no. On 17 May, PFC O approached him approximately three times and asked if he would do her a favor and get hashish for her. He refused until the last time when, in order to get her "off my back," he told her that he would see what he could do. He still did not intend to obtain hashish for PFC O. The next day she approached him at the softball field while he was in practice. He told her to see him later but did not set up any meeting with her. He testified she stopped him on his way out the gate and asked again. He was "tired of her bugging me," and again said he would see what he could do. Appellant testified he had never even seen hashish, but a friend, who was with him at the gate, took him to Stuttgart where the friend purchased the hashish for 30 DM. He obtained the hashish for PFC O as a favor, made no profit, but did so hoping she would go out with him in the future. On several later occasions, appellant was approached by the undercover agent requesting that he sell her drugs. He never refused but indicated he was busy or that she should see him later. In June, he saw PFC O at a river raft race. He told her that he had heard rumors that she was the supplier of information to the government, and if he got busted, she better watch out.

In rebuttal, PFC O testified that she did not approach appellant again for the sale of drugs. She was confronted a week or two later by appellant who was upset because the undercover agent had not kept a scheduled appointment to buy more drugs. PFC O indicated that if she did not buy from him she would buy from someone else. Appellant stated, "What are you trying to do now, ruin my business?" PFC O also testified that she never had sex with appellant. She confronted him for lying and spreading false rumors. Appellant denied having sex with her.

At trial, the military judge made special findings. Included in his findings was his conclusion that appellant was predisposed to distribute to friends under certain circumstances but not to the general public.

He found that appellant had a prior sexual encounter with PFC O before she became an informant. Appellant sold drugs to her friend hoping it might lead to another sexual encounter. The military judge also found Steve's testimony unworthy of belief.

■ In the case before us, appellant admitted to distributing marijuana to PFC O. His defense is that he was entrapped. The rules for resolving an entrapment issue were set forth by Chief Judge Everett in *United States v. Vanzandt*, 14 M.J. 332, 343 (C.M.A.1982), when he stated,

First, the defense is not raised unless the accused's commission of the alleged criminal act is proven beyond reasonable doubt, and there is evidence that the suggestion or inducement for the offense originated with a government agent. Second, once the defense is raised, the Government must prove that the accused was predisposed to commit the criminal activity and needed only the opportunity to commit the crime. Third, with one limited exception [the due process defense], the issue must be resolved by the fact finder. [footnotes omitted].

In the case before us, distribution of marijuana to the undercover agent is not at issue. Indeed, appellant admitted the distribution and stipulated that the substance was marijuana. Further, there is no question that PFC O made the initial suggestion when she approached appellant and requested he sell drugs to her. The defense of entrapment was raised and the government was required to prove appellant's predisposition to commit the crime and was only presented with an opportunity to do so.

■ In determining predisposition, significant factors include:

(1) whether the government made the initial suggestion of criminal activity; (2) whether the accused engaged in the activity for profit; (3) whether the accused was reluctant to engage in the activity and the degree of reluctance shown; and (4) the nature of and the circumstances surrounding the government's inducement, if any.

839

*United States v. Meyers,* 21 M.J. 1007, 1014 (A.C.M.R.1986) (citation omitted).

In the case *sub judice,* we note that PFC O, a government agent, solicited drugs for herself. Within twenty-four hours after PFC O first approached appellant, he procured hashish and sold it to an undercover agent posing as PFC O's friend. Although appellant may not have realized monetary profit, he anticipated going out with PFC O in the future and a possible future sexual relationship. This anticipated dating and sex was not offered to him by PFC O as an inducement to distribute the drugs. Appellant's misplaced expectation of these acts was as important to him as any financial gain. In short, appellant's anticipation of sex, although unoffered, was his profit motive. Weighing all the factors, to include appellant's sexual motive, we find appellant was predisposed to commit the offense and was only provided the opportunity to do so.

■ Further, the military judge determined that there was "not a scintilla of evidence of a due process violation...." We do not find any governmental conduct, under the circumstances of this case, so outrageous as to violate due process.[2] *See United States v. Frazier,* 30 M.J. 1231 (A.C.M.R.1990).

Applying the test for legal sufficiency, we find the evidence legally sufficient to support the finding of guilty to distribution of marijuana, as alleged. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Testing for factual sufficiency, after weighing the evidence and making allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt that appellant was not entrapped into committing the offense. We are also convinced beyond a reasonable doubt of appellant's guilt of the offense. *See UCMJ, art. 66(c),* 10 U.S.C.A. § 866(c); *see also United States v. Turner,* 25 M.J. 324 (C.M.A.1987).

The allegations of error, to include the error personally raised by appellant pursu-

ant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), are without merit.

The findings of guilty and the sentence are affirmed.

Judge HAESSIG and Judge ARKOW concur.

**2.** Our holding should not be construed as permitting a female government agent to induce the distribution of drugs by offering sexual fa-

vors. In the case before us, it is clear that sex was not offered as an inducement.