UNITED STATES, Appellee,

v.

Staff Sergeant Phillip T. EVANS, 346–62–8474, United States Army, Appellant. .

ACMR 9300512.

U.S. Army Court of Military Review.

31 Jan. 1994.

For Appellant: Captain Michael A. Egan, JAGC, Captain Christopher W. Royer, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Major Joseph C. Swetnam, JAGC (on brief).

Before WERNER, LANE, and RUSSELL, Appellate Military Judges.

## OPINION OF THE COURT

LANE, Judge:

Contrary to his pleas, the appellant was convicted by a special court-martial composed of officer members of violating a lawful general regulation, sodomy, fraternization, and adultery, in violation of Articles 92, 125 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 925 and 934 (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge and reduction to Private E1.

The appellant asserts, inter alia, that (1) he was prejudiced by the military judge's refusal to order a joint trial with the other drill sergeant involved in the events of 9 October 1992, and (2) his military defense counsel was ineffective. We find that neither of these complaints has merit.

### I.

■ Rule for Courts–Martial 601(e)(3) [hereinafter R.C.M.] provides, in pertinent part, that "[a]llegations against two or more accused may be referred for joint trial." This Rule restates Federal Rule of Criminal Procedure 8(b) [1] in military nomenclature.

1.  (b) Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defen-

Manual for Courts–Martial, United States, 1984, app. 21, Analysis, at A21–28. While a substantial body of military law has sprung up over the joinder of offenses, little has been said about the joinder of offenders. Even then, the issue has been one of the propriety of the government joining offenders when the defendant has been seeking severance. *United States v. Respess,* 19 U.S.C.M.A. 230, 41 C.M.R. 230 (1970); *United States v. Cross,* 2 M.J. 1057 (A.C.M.R. 1976). The issue before us in this case, however, is whether an accused has the right to demand a joint trial.

It is important to note two features of R.C.M. 601. First, the Rule enumerates the powers of a convening authority with respect to the referral of charges for trial by a court-martial. Nowhere does it address any role for an accused in the process. Second, R.C.M. 601(e)(3) is permissive (i.e., "may"). With respect to Federal Rule of Criminal Procedure 8(b), whether two defendants should be tried jointly lies in the discretion of the United States Attorney. *United States v. Mimee,* 89 F.Supp. 148 (E.D.Mich.1950). The Federal courts have described Rule 8(b) as embodying a balance between the defendant's right to have his or her guilt determined separately, and the practical benefit to the government and the courts of consolidated proceedings. *United States v. Martinez,* 479 F.2d 824 (1st Cir.1973). Therefore, it is clear that any right or benefit of a joint trial accrues to the convening authority, not the accused. While an accused has a paramount right to be tried on the merits of the case against him without reference to the guilt of others, he has no right to demand a joint trial with another. Moreover, R.C.M. 601 does not have, as an underlying purpose, the protection of personal liberties or interests. Therefore, appellant has no standing to challenge the convening authority's decision. *See United States v. Russo,* 1 M.J. 134, 136 (C.M.A.1975); *see generally United States v. Frazier,* 30 M.J. 1231, 1236 and n. 5 (A.C.M.R.1990) (citing *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954)).

dants may be charged in one or more counts together or separately and all of the defendants

## II.

Closely allied to the issue of whether the appellant has a right to a joint trial are his claims that he was denied a fair trial because (1) everyone knew the other drill sergeant had been convicted two months earlier, so the court members assumed the appellant was also guilty, (2) the separate trials allowed witnesses to bolster and perfect their testimony, and (3) the separate trials lessened the other drill sergeant's value as an alibi witness. After a review of the entire record, we find no denial of a fair trial. The civilian defense counsel conducted an exceptionally competent voir dire of the members, probing both their prior knowledge of the companion case and their attitudes on a variety of issues. While some witnesses were testifying for the fourth time, the civilian defense counsel skillfully probed their testimony at this trial using their prior statements at the two Article 32, UCMJ, sessions and the earlier trial. Finally, of the three alibi witnesses the appellant had to present, the other drill sergeant would have been the least effective—even at a joint trial—as he had every reason to lie.

It could be argued, in fact, that the appellant had a benefit from a second, separate trial in that his counsel (who had also defended the other drill sergeant) had had the benefit of a real life "dry run" before having to conduct the appellant's defense, and thus was better prepared than he would have been at a joint trial.

## III.

In his initial submission to this court, the appellant's complaint against his military defense counsel, Captain (CPT) S, was that the appellant and his civilian defense counsel, Mr. R, had to have "secret" meetings, without CPT S, "to keep information from leaking to the prosecutors." In a later submission, the appellant also states that CPT S was "inexperienced," spent too much time delivering messages from the prosecutor try-

need not be charged in each count.

ing to get the appellant to accept an administrative discharge in lieu of court-martial and testify against the other drill sergeant (rather than defending the appellant), failed after the trial to secure the tapes from the Article 32, UCMJ, hearing (which the appellant wanted to send to his congressman to show how much lying was going on), and was unable to answer the appellant's questions concerning the government's conduct with respect to the two privates who made the allegation of misconduct against him and the other drill sergeant. The issue we must decide is whether the appellant has established that the conduct of CPT S fell below professional norms, and, if so, did it prejudice the appellant's trial.

By affidavits to this court, CPT S denies that he ever breached his client's confidences, and Mr. R. states that he has known CPT S for some time "and I whole-heartedly believe that he whould (sic) never have divulged privileged information." Mr. R. also states that meetings without CPT S were held in his downtown office as the appellant perceived there was greater privacy, and that the appellant was apprehensive about every aspect of his case, which may have fueled suspicions about the Trial Defense Service Office.

The appellant has not, in either submission, specifically stated what information was "leaked" to the prosecution; therefore, there is no factual basis upon which to evaluate the merits of this claim.[2] CPT S's interest in the administrative discharge being more than his interest in developing a defense is a matter of perception. The appellant is not claiming that CPT S refused to assist Mr. R because he wanted the appellant to take the administrative discharge. In fact, CPT S was obligated to pass all government offers to the appellant, and the government could approach the appellant only through his counsel. Army Reg. 27–26, Rules of Professional Conduct for Lawyers, Rules 1.4 and 4.2 (1 May 1992) (a lawyer shall keep a client reasonably informed about the status of a matter; a lawyer shall not communicate about a

matter with a party he knows to be represented unless that party's lawyer consents). Finally, the other matters do not relate to the conduct of the trial.

Accordingly, the appellant has failed to establish a valid claim of ineffective assistance of counsel, and has not overcome the strong presumption of counsel competency. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott,* 24 M.J. 186 (C.M.A.1987); *United States v. Crum,* 38 M.J. 663 (A.C.M.R.1993).

The remaining assertions of error, to include the rest of those raised personally by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), are without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge WERNER and Judge RUSSELL concur.

---

**2.** It is more likely that information gained by good government investigation came to light after the appellant had provided the same to his counsel. It only seemed, given the appellant's apparent paranoia, that it must have been leaked by his counsel.